UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAUL E. HACKMAN, *et al.*,

        Plaintiffs, :

v.

        Case No. 2:21-cv-704
        Judge Sarah D. Morrison
        Magistrate Judge Elizabeth
        Preston Deavers

SELECTIVE INSURANCE
COMPANY OF AMERICA, :

        Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Selective Insurance Company of America's Motion for Summary Judgment. (ECF No. 44.) The Motion is fully briefed and ripe for consideration.[1] (ECF Nos. 63, 66.)

## I. BACKGROUND

Plaintiffs Bryden Road Properties, Inc. and its owner, Paul E. Hackman entered a Commercial General Property Coverage Policy with Selective on October 12, 2018, to insure a building on East Broad Street in Columbus, Ohio, and a warehouse on E. 5th Ave. in Columbus, Ohio. (ECF No. 63-1, Hackman Aff., PageID 4334.) The Policy was effective through October 12, 2019. (ECF No. 52-2, PageID 3394.) In the event of a loss, the Policy required Mr. Hackman to:

---

[1] Defendant's reply brief exceeded the 10-page length limit imposed by the Court's Standing Order No. 10. Defendant filed a Motion for Leave to File Excess Pages (ECF No. 67) to address this defect. The Motion is **GRANTED** so as not to unduly delay resolution of the pending Motion for Summary Judgment. However, counsel are advised that leave to file excess pages in a reply should be sought before a non-complying reply is filed.

> (1) Notify the police if a law may have been broken; (2) Give us prompt notice of the loss or damage. Include a description of the property involved; (3) As soon as possible, give us a description of how, when and where the loss or damage occurred . . . ; (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed . . . ; (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms; (8) Cooperate with us in the investigation or settlement of the claim.

(ECF No. 4-1, PageID 704–05.)

### A. The East Broad Street Claim

On March 11, 2019, Mr. Hackman filed an insurance claim on the East Broad Street property for water damage from a frozen pipe burst. (ECF No. 44-1, Hackman Dep., PageID 1579.) The reported date of the damage and loss was January 24, 2019. (*Id.*)

Mr. Hackman had filed a claim in 2017 with his previous insurance company, Westfield Insurance, for water damage to the same property. (*Id.*, PageID 1550.) Westfield paid out approximately $20,000 for the claim. (*Id.*) Mr. Hackman represented to Selective that the damage reported as part of the Westfield Claim was fully repaired and that the property was being used as a business office. (*Id.*, PageID 1580.)

Selective undertook investigation and performed a physical inspection of the property roughly a week after the March 2019 claim was filed. (*Id.*) Despite Mr. Hackman's representation that this was a commercial property, a man claiming to be the sole residential tenant of the property accompanied Selective's claim adjuster during the inspection. (ECF No. 44-2, PageID 1673–74, 1678.) The adjuster testified

2

that the property "did not appear" to be "used as an office space." (ECF No. 44-20, PageID 1916.) Selective's inspection also revealed that it was difficult to differentiate any new damage from the damage under the Westfield Claim. (*Id.*, PageID 1919–20.)

On March 22, 2019, Selective sent Mr. Hackman a Reservation of Rights Letter ("ROR Letter") describing its preliminary observations of the property and reserving its rights and defenses to coverage. (ECF No. 44-4, PageID 1700.) The ROR Letter informed Mr. Hackman that pursuant to the Policy, he had to submit a sworn proof of loss statement within 60 days. (*Id.*, PageID 1705.) On May 6, 2019, Selective sent a second ROR Letter to Mr. Hackman, warning that if he did not submit the sworn proof of loss statement, Selective would close the claim. (ECF No. 44-5, PageID 1708.) When Mr. Hackman did not submit a statement, Selective sent a third ROR Letter on June 6, 2019, informing him that it was terminating the claim. (ECF No. 44-6, PageID 1712.) Plaintiffs admit that Mr. Hackman did not submit a sworn proof of loss statement in response to any of the Letters. (ECF No. 44-9, Hackman Admissions, PageID 1776–77.)

Mr. Hackman's obligation to provide a sworn proof of loss statement is detailed in Policy Section E(3)(a)(7):

> 3. Duties In The Event Of Loss or Damage
>    a. You must see that the following are done in the event of loss or damage to Covered Property:
>       . . .
>       (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

3

(ECF No. 4-1, PageID 704–05.)

### B. The Warehouse Claim

On August 24, 2020, Mr. Hackman filed a separate claim for theft from his commercial warehouse; the reported date of loss was January 30, 2019 – roughly 19 months before he filed the claim. (Hackman Dep., PageID 1608.)

As part of its investigation into the Warehouse Claim, Selective requested an "inventory [worksheet], a repair invoice for the door through which entrance was gained, a photo of the door, any original purchase receipts or proof of purchase for the allegedly stolen items, and a police report." (Martin Decl., PageID 1761–62.) Mr. Hackman responded with photos of the broken door and repair invoices, photos of a partially empty tire storage rack, and an email from the neighboring business owner advising that the door to the warehouse was off its hinges. (Martin Decl., PageID 1762.) Mr. Hackman also provided a police report dated August 26, 2020, in which he claimed a loss of 50 aluminum wheels valued at $30,000, damage to an antique washer totaling $2,000, and damages to a vandalized door of $4,000. (*Id.*) Mr. Hackman delayed filing the police report because he had thought that one was filed by his neighbor on the day of theft. (Hackman Dep., PageID 1604, 1608.)

On September 18, 2020, Selective sent Mr. Hackman a ROR Letter reserving its rights and defenses to coverage and advising him of his contractual duty to cooperate with the investigation, to provide a sworn proof of loss statement within 60 days of the request, and to provide additional supporting documentation. (Martin Decl., PageID 1762.)

4

In November 2020, after correspondence between Mr. Hackman, his lawyer, and Selective's claims adjuster, Mr. Hackman represented that the total value of the loss was actually $56,000 and provided a "Property Worksheet" detailing the alleged losses based on what he "had . . . in [his] head." (*Id.*, PageID 1763; Hackman Dep., PageID 1614.) He did not, however, provide purchase receipts, invoices, or other documents pertaining to the specific inventory he claimed had been stolen. (Martin Decl., PageID 1763.) In fact, Mr. Hackman testified that he did not maintain an inventory ledger, had no accounts payable or accounts receivable ledgers, and had no tax returns reflecting business activity at the Warehouse. (Hackman Dep., PageID 1598–1600.)

Selective heard nothing else from Mr. Hackman until he called a month later and asked when he could expect payment. (Martin Decl., PageID 1763.) Selective informed him that the documents provided were insufficient. (*Id.*) Attempting to remedy this defect, Mr. Hackman sent photos of a car with the notation "bought for 1,200"; an invoice from "Wheel Medic" dated 6/7/2018 for $540 with email exchanges about wheels and no dollar amount specified; and a handwritten "Bill of Sale" dated 10/17/2017 for a 1987 Mercedes 560 SL for $5,800, including a note "Wheels valued at $1,800." (*Id.*, PageID 1763–64.)

Finally, on January 12, 2021, Mr. Hackman submitted a sworn proof of loss, claiming the total loss to be $59,717.59 – more than either of the previous two amounts claimed. (*Id.*, PageID 1763–64.)

### C. Procedural Background

Plaintiffs bring two claims against Selective for breach of contract and one claim for bad faith. (ECF No. 2, Compl., PageID 209–10.) Selective brings two counterclaims for breach of contract and two for declaratory judgment. (ECF No. 4, Answer, PageID 633–54.) Selective moves for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a

6

verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

Because this action is before the Court under diversity jurisdiction, state law governs the substantive issues. *Issuer Advisory Grp. LLC v. Tech. Consumer Prod., Inc.*, 2015 WL 458113, at *3 (N.D. Ohio Feb. 3, 2015) (citation omitted). The parties do not dispute that Ohio law governs Plaintiffs' claims and Selective's counterclaims, so the Court applies Ohio law. *See Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).

### III. ANALYSIS

Selective argues that it is entitled to judgment on Plaintiffs' claims and its counterclaims because Plaintiffs did not fulfill their contractual obligations and breached the Policy.

#### A. East Broad Street Claim

Selective moves for summary judgment on Plaintiffs' breach of contract claim (Count I) and on its own counterclaim for breach of contract (Counterclaim, Count I) as to the East Broad Street Claim.

Ohio law is clear that "an insured's failure to submit a sworn proof of loss statement as required by a policy of insurance precludes payment of a claimed loss." *Chong v. American Fam. Ins.*, 2005 WL 2334506, at *3 (Ohio Ct. App. 2000) (citing *Home Ins. Co. v. Lindsey*, 26 Ohio St. 348, 356 (1875)). Here, the Policy required

7

Plaintiffs to submit a sworn proof of loss statement within 60 days of receiving Selective's request for the same. Policy Section E(3)(a)(7).

Selective requested a loss statement on March 22, 2019, informing Mr. Hackman that he had 60 days to submit it. In a second letter, Selective reminded Mr. Hackman to submit the statement by May 22, 2019, and warned that it would close the claim if the statement was not submitted. (ECF No. 44-5, PageID 1708.) Finally, on June 6, 2019, Selective informed Mr. Hackman that it was closing the claim for his failure to provide the sworn proof of loss statement as required by the Policy. (ECF No. 44-6, PageID 1711–12.)

Plaintiffs admit they did not submit a sworn proof of loss statement. (ECF No. 44-9, Hackman Admissions, PageID 1776–77.) However, they contend that their failure to submit a proof of loss statement is not dispositive because Selective waived the proof-of-loss requirement by undertaking an investigation into the claim. At least one Ohio court has found that "an insurance company may be found to have waived the failure to file a notice of proof of loss if the company rejects the insured's claims upon grounds other than the failure to furnish a proof of loss or otherwise undertakes an investigation of the noticed loss." *Reasor v. Leader National Insurance Company*, 1991 WL 58414, *2 (Ohio Ct. App. 1991) (citation omitted). However, the *Reasor* decision is distinguishable and is not applicable here – that court considered this exception in the context of an insurance company that did not raise the proof-of-loss issue with the claimant during the investigation, and instead first raised the issue on summary judgment. Here, Selective timely raised

8

Mr. Hackman's obligation to comply with the proof-of-loss requirement during its investigation and prior to the filing of this lawsuit.

Moreover, Selective's investigation into the East Broad Street claim did not constitute a waiver of the Policy's proof-of-loss requirement because Selective reserved its right to assert all defenses to coverage. *See Transamerica Ins. Group v. Beem*, 652 F.2d 663, 666 (6th Cir. 1981) (If an insurer "gives proper notice that it is reserving its rights, in spite of investigating the claim . . . such investigation . . . will not waive its right to rely on the breach of condition.") Selective sent three ROR letters to Plaintiffs regarding the claim, the first letter included language expressly "reserve[ing] all of our available rights while we investigate . . . and make a determination as to . . . coverage." (ECF No. 44-4, PageID 1705–06.)

Nor is Plaintiffs' obligation to comply with the proof-of-loss requirement negated by Mr. Hackman contacting the claims adjuster and inquiring about what to include in the statement. Rather, the plain language of the Policy requires a sworn proof of loss statement, and mere communication with Selective does not fulfill this contractual obligation. *Evanoff v. The Standard Fire Ins. Co.*, 2007 WL 2407069, at *4 (N.D. Ohio Aug. 21, 2007) (citing *Neuser v. Hocker*, 246 F.3d 508, 510 (6th Cir. 2001)) (The Sixth Circuit has consistently held that "the proof of loss requirement is to be strictly enforced.")

Plaintiffs breached the Policy provision requiring a sworn proof of loss statement. Accordingly, Selective's Motion on Plaintiffs' Count I and its own Counterclaim Count I is **GRANTED**.

### B. Warehouse Claim

Selective also moves for summary judgment on Plaintiffs' breach of contract claim (Count II) and on its own counterclaim for breach of contract (Counterclaim, Count II) as to the Warehouse claim. Selective raises several arguments as to why the undisputed facts establish Plaintiffs' breach of the Policy, but the central ground for summary judgment is Mr. Hackman's failure to cooperate with Selective's investigation.

Ohio courts routinely enforce "cooperation clauses," which require the insured "to make a fair frank disclosure of information demanded by the company." *Gourmet Cafe v. Travelers Indem. Co. of Am.*, 2003 WL 27381210, at *8 (N.D. Ohio June 10, 2003) (citation omitted). An insured's failure to comply with a cooperation clause "lets the insurer off the hook if the insured's noncooperation 'result[s] in material and substantial prejudice to the insurance company.'" *Ngoc Tran v. Federal Ins. Co.*, 728 F. App'x. 576, 577 (6th Cir. 2018) (citations omitted). A party's noncooperation is generally a question of fact for the jury, but "where the material facts are undisputed . . . the court may decide the question as a matter of law." *Id.*

In *Ngoc Tran*, the Sixth Circuit affirmed summary judgment for the insurance company where the insured failed to provide the information requested by the insurer in its investigation of alleged jewelry theft, including financial records and tax returns. *Id.* at 577–78. This failure negatively affected the insurance company's "ability to complete a full and fair investigation of the claim." *Id.* at 578.

10

Here, Policy Section E(3)(a)(8) required Plaintiffs to "[c]ooperate with [Selective] in the investigation or settlement of the claim." (ECF No. 4-1, PageID 704–05.) The undisputed material facts show that they failed to do so.

Selective repeatedly requested documentation that would corroborate the theft and claimed loss amount, but Plaintiffs did not provide it. Plaintiffs did not maintain an inventory ledger, had no accounts payable or accounts receivable ledgers, and had no tax returns reflecting business activity at the Warehouse. (Hackman Dep., PageID 1598–1600.) Plaintiffs also failed to provide receipts, invoices, or other sufficient documentation of losses from the alleged theft. This noncooperation was "material and substantial." *See Ngoc Tran*, 728 F. App'x at 578 (finding that repeated failures to provide the specific requested information materially and substantially prejudiced the insurer). Mr. Hackman's noncooperation impeded Selective's ability to investigate the claim.

Plaintiffs nonetheless insist that Mr. Hackman's attempted compliance was enough. They argue that he provided some information about the inventory: photos, piecemeal receipts, and a "Property Worksheet" detailing the alleged losses based on what he "had . . . in [his] head." (Hackman Dep., PageID 1614.) However, compliance with some of a policy's requirements or the insurer's requests "does not excuse the party's material failure to comply with others." *Ngoc Tran*, 728 F. App'x at 578; *See also Gourmet Cafe*, 2003 WL 27381210, at *9 (providing a general list of items based on memory, and not providing any supporting documentation until over 11 months after the theft, is insufficient to satisfy an insurer's request). And here,

11

Plaintiffs did not cooperate with Selective's investigation; that lack of cooperation was a breach of the Policy terms.

Because Mr. Hackman's noncooperation with Selective's investigation alone is sufficient grounds to resolve the Motion, the Court need not address Mr. Hackman's purported breaches of other Policy provisions.

Accordingly, Selective's Motion on Plaintiffs' Count II and its own Counterclaim Count II is **GRANTED**.

### C. Bad Faith Claim

Plaintiffs cannot prevail on their bad faith claim because there are no valid underlying claims for coverage. *See Gaston v. Allstate Ins. Co.*, 2008 WL 5716525, at *5 (N.D. Ohio July 31, 2008) (finding there is no viable bad faith claim when the insured "materially breached his obligations under the policy by failing to cooperate"); *Bob Schmitt Homes, Inc. v. Cincinnati Ins. Co.*, 2000 WL 218379, *4 (Ohio Ct. App. 2000). Thus, Selective's Motion on Plaintiffs' Count III is **GRANTED**.

### D. Selective's Counterclaims for Declaratory Judgment

As to the East Broad Street claim, Selective moves for summary judgment on Counterclaim Count III for a declaratory judgment that: "Selective was denied the rights to which it was entitled under the Policy; (2) Selective's investigation of the East Broad Street claim was reasonable and in good faith; and (3) Selective had no duty to pay the claim for the East Broad Street property."

Similarly, as to the Warehouse claim, Selective moves for summary judgment on its Counterclaim Count IV for declaratory judgment that: (1) Selective was denied the rights to which it was entitled under the Policy; (2) Selective's investigation of the [Warehouse] property was reasonable and in good faith; and (3) Selective has no duty to pay the claim for the [Warehouse] property.

As discussed above, Plaintiffs breached the Policy. Accordingly, Selective has no duty to pay either claim. Selective's Motion on its own Counterclaims Counts III and IV is **GRANTED**.

## VI. CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 44) is **GRANTED**. The Clerk is **DIRECTED** to **TERMINATE** this case from the docket of the United States District Court for the Southern District of Ohio.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**